FILED

2019 AUG -2 PM 4: 09

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 19 - 8113          DIVISION ""  6          SECTION ""  11

WOODWARD DESIGN + BUILD, LLC

versus

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,
TOKIO MARINE KILN, AND EVEREST INDEMNITY INSURANCE COMPANY

FILED:_____       _____
                                   DEPUTY CLERK

### PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Woodward Design + Build, LLC ("Woodward"), a Louisiana limited liability company with its principal office in New Orleans, Louisiana, who respectfully avers upon information and belief as follows:

I.

Made Defendants herein are:

> Certain Underwriters at Lloyd's London, (hereinafter referred to as "Lloyds"), which upon information and belief is a foreign insurance company who, upon information and belief, is authorized to issue insurance in the State of Louisiana.
>
> Tokio Marine Kiln, (hereinafter referred to as "Tokio Marine"), which upon information and belief is a foreign insurance company who, upon information and belief, is authorized to issue insurance in the State of Louisiana.
>
> Everest Indemnity Insurance Company, (hereinafter referred to as "Everest"), which upon information and belief is a foreign insurance company who, upon information and belief, is authorized to issue insurance in the State of Louisiana.

*JURISDICTION AND VENUE*

II.

Jurisdiction and venue are proper before this Honorable Court in Orleans Parish under Louisiana Code of Civil Procedure Art. 76 because the project, hereinafter defined, is located in Orleans Parish and the loss at issue occurred in Orleans Parish, Louisiana.

## *THE PROJECT*

### III.

Woodward asserts causes of action against Lloyd's, Tokio Marine, and Everest (hereinafter collectively referred to as the "Insurers") for declaratory relief and monetary damages resulting from multiple breaches of their obligations under the builder's risk insurance policy issued by the Insurers that covered losses incurred by Woodward as an insured.

### IV.

On October 31, 2017, a standard form A-141 Agreement ("Contract") was entered into between Woodward, as design-builder, and Woodward Audubon, LLC ("Woodward Audubon"), as owner, for the construction of 730 Julia Apartments located at 730 Julia Street New Orleans, Louisiana in the Parish of Orleans ("Project").

### V.

Per the terms of the Contract, Woodward Audubon was required to purchase and maintain property insurance written on a builder's risk "all-risk" or equivalent policy form and Woodward as design-builder was to be an insured under the policy.

## *THE POLICY*

### VI.

As required by the Contract, Woodward Audubon purchased, and the Insurers issued Builder's Risk Policies for the Project identified as: 1) Certain Underwriters at Lloyd's London, Account/Policy No. 484055; 2) Tokio Marine Kiln, Policy No. CSN000192; and 3) Everest Indemnity Insurance Company, Policy No. IM3CM00025-171 (attached to and forming a part of Account/Policy No. 484055) with an effective period of 11/09/2017 - 08/09/2019 ("BR Policies").

### VII.

According to Endorsement 1, Section 8 of BR Policies, all contractors and sub-contractors on the Project, at every tier are insureds.

### VIII.

Therefore, per the terms of the Contract and the BR Policies, insurance included the interests of the Owner Woodward Audubon and Design-Builder Woodward as insureds.

### IX.

It is long recognized in Louisiana that the builder's risk policy "protects the builder against loss of that which he has contracted to produce." *Bizet v. General Accident and Indemnity Co.,*

457 So.2d 150 (La. App. 2d Cir. 1984). In other words, a builder's risk policy insures each contractor against loss of the labor and materials he has at risk. The builder's risk policy is conditioned to cover losses occurring in the course of construction. See La. Prac. Constr. Law § 16:3.

X.

Under an "all-risk" builder's risk policy, such as the instant BR Policy, all perils are covered unless clearly and specifically excluded. *See Dawson Farms, LLC v. Millers Mut. Fire Ins. Co.*, 34,801, 794 So.2d 949, 951 (La. App. 2 Cir. 8/1/01).

XI.

The BR Policies provide coverage, *inter alia*, for soft costs; gross earnings; rental value; debris removal; errors and omissions; professional fees and claim preparation costs; extra expenses/expediting expenses; service interruption; interior water damage; penalties for non-completion of the Project.

XII.

Specifically, the BR Policies contain a Builder's Risk Endorsement which was purchased by the Insureds modified the insurance provided under the Policy for Interior Water Damage. The Endorsement provides:

The following additional Coverages and Special Exclusion shall apply, subject to the provisions of the policy.

| 1. Coverages | Sublimits of Liability (Per Occurrence) |
|---|---|
| A. Interior Water Damage | $ 5,000,000 |
| B. Scaffolding and Temporary Structures | $ 250,000 |
| C. Offsite Temporary Storage | $ 2,000,000 |
| D. Contract Penalty | $ 5,000 |

The sublimits stated above are Per Occurrence (unless noted otherwise) and are included within the limits of insurance provided elsewhere in the policy, and are not additional limits. A sublimit must be shown for the specific coverage extension(s) above for coverage to apply and coverage for the above extension(s) is further subject to the following:

A. Interior Water Damage, if exterior is "incomplete":
  (1) The Per Occurrence deductible is $ 50,000.
  (2) Interior Water Damage is defined as loss or damage to covered property arising from, contributed to, or resulting from rain, snow, sleet or ice, all whether wind-driven or not that enters the interior of any building(s) or structure(s) when the roof and outside walls are incomplete. "Incomplete" means at the time of loss or damage, the envelope of the building or structure which includes the exterior walls and roofing systems are not watertight based on the structure's design. The Insured agrees that they will take all appropriate precautions to avoid loss or damage to covered property from the peril enumerated above.

However, if the exterior of the building is complete, this coverage does not apply.

\*   \*   \*

D. The Companies will pay the contract penalties for non-completion of the project the Insured is required to pay as a direct result of a Covered Cause of Loss to Covered Property. The penalties must be specified in the construction contract, signed prior to the start of construction.

3

## *THE CLAIM*

### XIII.

Prior to the completion of the exterior of the building, in January 2019, while Woodward performed its work in accordance with the plans and specifications, industry standards, and in a workmanlike manner, the Project experienced substantial damages and delays due to interior moisture damage from weather resulting in damage to wood framing, causing the wood to be over-saturated, damaging drywall, and causing surface mold.

### XIV.

The interior moisture damage is an "Occurrence" under the Policy. "Occurrence" is defined by the Policy in Section VIII.Y as:

> **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

### XV.

As a result of this covered Occurrence, Woodward has incurred and will incur damages including but not limited to property remediation, repair, and replacement costs, extra expenses, and other covered costs (the "Claim").

### XVI.

Woodward's damages for the Claim covered by the BR Policies exceed $1,313,154.61 which includes a schedule impact of 75 days.

### XVII.

On February 21, 2019, Woodward provided proof of loss to the Insurers for the interior water damage on the Project.

### XVIII.

As stated in Woodward's February 21, 2019 proof of loss, the damage caused by the interior moisture is a covered loss pursuant to the Endorsement. The Policy Endorsement states that it covers Interior Water Damage which is defined as "damage to covered property arising from, contributed to, or resulting from rain…when the roof and outside walls are incomplete."

### XIX.

The Interior Water Damage resulted from rain, no other source of water was present in the building, and the shell of the building was incomplete at the time the water entered the building.

4

Moreover, at all times, Woodward performed its work in accordance with the plans and specifications, industry standards, and in a workmanlike manner.

XX.

Woodward took appropriate precautions to avoid loss and mitigate damage. Woodward hired J.S. Held to determine the cause of the Interior Water Damage and to establish a remediation protocol. Additionally, Woodward properly documented and substantiated its claims and provided the Insurers with all information and documentation requested of Woodward to support its Claim.

XXI.

The Insurers have failed to properly adjust and compensate Woodward for its covered losses, damages, and expenses as a result of the Interior Water Damage.

XXII.

It took 34 days for an adjuster to be assigned to Woodward's claim. Thereinafter, Woodward cooperated with the adjuster and provided responses to all inquiries over the next 40 days. Specifically, Woodward provided and facilitated the following:

- March 28, 2019: Woodward walked site with insurance adjuster
- March 29, 2019: Woodward provided additional photographs
- April 1, 2019: Woodward provided additional photographs
- April 3, 2019: Woodward provided J.S. Held photographs
- April 4, 2019: Woodward provided J.S. Held photographs
- April 15, 2019: Woodward walked the site once again with insurance adjusters
- April 28, 2019: Woodward provided J.S. Held photographs
- May 3, 2019: Woodward sent aerial photo showing monthly time-lapse of construction
  May 3, 2019: Woodward sent schedule updates dated August 13, 2018 and October 16, 2018
- May 3, 2019: Woodward sent contact info of structural engineer
- May 3, 2019: Woodward sent schedule updates dated December 5, 2018, February 18, 2019, and April 1, 2019
- May 7, 2019: Woodward sent construction plans
- May 7, 2019: Woodward sent specifications

However, it took another 58-65 days for Woodward to receive a Reservation of Rights.

XXIII.

The Insurers are in breach of their contractual obligations to Woodward under the BR Policies and owe Woodward compensation for the remediation and repair costs and additional expenses incurred by Woodward as a result of the above Occurrence and Claim.

5

XXIV.

The Insurers have acted arbitrarily, capriciously, and without probable cause in failing to pay amounts owed under the BR Policy promptly; in failing to properly investigate the claims; in unreasonably delaying adjustment of the claims; in unreasonably delaying and refusing to discuss resolution of the claims; and in other acts and omissions to be shown at trial, all in violation of the BR Policy and Louisiana law, including La. R.S. § 22:1892 and La. R.S. § 22:1973.

## *COUNT I – DECLARATORY RELIEF*

XXV.

Woodward reavers the allegations stated in the preceding paragraphs as if fully set forth herein.

XXVI.

An actual and justiciable controversy exists between Woodward and the Insurers regarding the terms and conditions of coverage and payment under the BR Policy, and a proper adjustment of Woodward's claims. This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

XXVII.

Woodward is entitled to an order from this Honorable Court declaring the rights and obligations of the parties, including but not limited to a declaration that Woodward is an insured under the BR Policy and is entitled to full payment by the Insurers up to the full amounts of the Claim submitted and those covered expenses that will be submitted in the future.

## *COUNT II – BREACH OF CONTRACT*

XXVIII.

Woodward reavers the allegations stated in the preceding paragraphs as if fully set forth herein.

XXIX.

Woodward timely submitted its Claim for the aforementioned losses to the Insurers, and Woodward has fulfilled all conditions under the BR Policy.

XXX.

The Insurers have failed to comply with their obligations under the BR Policy and, as such, stand in breach of their contracts of insurance.

### XXXI.

As a direct result of the Insurer's breaches of the BR Policy, Woodward has been damaged and continues to suffer significant damages.

### XXXII.

Woodward is entitled to an award of compensatory damages, attorneys' fees, pre- and post-judgment interest, and other relief as this Court may deem just and proper.

### *COUNT III – BAD FAITH*

### XXXIII.

Woodward reavers the allegations stated in the preceding paragraphs as if fully set forth herein.

### XXXIV.

The Insurer's breach of their policies under which Woodward is an insured constitutes bad faith and, pursuant to Article 1997 of the Louisiana Civil Code, the Insurers are an obligor in bad faith; as such, Woodward is entitled to all damages, whether foreseeable or not, that are a direct result of the Insurer's failure to perform, including attorney's fees.

### XXXV.

Pursuant to La. R.S. § 22:1892(A)(1), the Insurers were obligated to pay Woodward, any amounts owed to Woodward within thirty (30) days of receipt of proof of the loss and have failed to do so. As a result of that failure -- which was arbitrary, capricious, and without probable cause – the Insurers are liable for all amounts due under the BR Policy, plus up to fifty percent (50%) of the difference between the amount of Woodward's claims that have been paid to date and the amount hereafter found to be due, as well as all reasonable attorney's fees and costs incurred in the prosecution of this action.

### XXXVI.

Pursuant to La. R.S. § 22:1892(A) the Insurers owed Woodward a duty of good faith and fair dealing, an affirmative duty to adjust Woodward's claims fairly and promptly, and to make a reasonable effort to settle claims with the insured. Because the Insurers breached these duties, they are liable to Woodward for all damages as a result of the breaches, including but not limited to those specified in La. R.S. § 22:1973(C).

XXXVII.

Pursuant to La. R.S. § 22:1973(B), the Insurers breached their duty of good faith and fair dealing to Woodward and their affirmative duty to adjust claims fairly and promptly when they failed to pay Woodward within sixty (60) days of receipt of satisfactory proof of the loss. Moreover, such failure was arbitrary, capricious, and without probable cause. The Insurers further breached their duty of good faith and fair dealing to Woodward and their affirmative duty to adjust claims fairly and promptly by misrepresenting and/or arbitrarily denying coverage for Woodward's claim. As a result, the Insurers are liable for penalties in the amount of two times the damages sustained by Woodward, among other damages.

XXXVIII.

In the alternative, if this Court determines that any of the items described in the preceding paragraphs are not "special damages" under the meaning of La. R.S. § 22:1973(C), Woodward seeks to recover for those items as consequential damages pursuant to Article 1997 of the Louisiana Civil Code.

### *ATTORNEY'S FEES AND COSTS*

XXXIX.

In addition to a judgment in the principal sum owed to Woodward of $1,313,154.61 and all statutory penalties and costs allowed by law, Woodward is entitled to recover all attorney's fees and costs under the terms of BR Policy and Louisiana law, as well as any costs incurred to file suit and pursue amounts owed from the Insurers, and any and all other costs incurred by Woodward as a result of the acts or omissions to be shown in this matter.

### *JURY DEMAND*

XL.

Woodward demands a trial by jury of this matter for all issues so triable.

**WHEREFORE**, Plaintiff, Woodward Design + Build, LLC prays that their Petition for Damages be deemed good and sufficient and that after due proceedings there be Judgment in its favor and against Certain Underwriters at Lloyd's London, Tokio Marine Kiln, and Everest Indemnity Insurance Company for damages, penalties and attorney's fees in a sum that is reasonable and appropriate, together with legal interest from date of judicial demand until paid, for all costs of these proceedings and for all other general, legal and equitable relief as nature of the case permits.

Respectfully submitted:

**RIESS LEMIEUX, LLC**

By: _____
Christopher K. LeMieux (#27383)
Johanna Elizabeth Lambert (#33227)
1100 Poydras Street, Ste. 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
E-mail: CLeMieux@RLLaw.com
Email: JLambert@RLLaw.com
*Attorneys for Woodward Design + Build, LLC*

**PLEASE SERVE:**

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON**
**Via Long Arm**
Mendes and Mount
750 Seventh Avenue
New York, New York 10019-6829

AND

Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**TOKIO MARINE KILN**
**Via Long Arm**
Mendes and Mount
750 Seventh Avenue
New York, New York 10019-6829

AND

Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**EVEREST INDEMNITY INSURANCE COMPANY**
**Via Long Arm**
Mendes and Mount
750 Seventh Avenue
New York, New York 10019-6829

AND

Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809